No. 44,246

Dr. J. G. Haines, *Appellee*, v. B. A. Nickel, R. D. Weaverling and J. C. Rust, constituting the Board of Examiners in Optometry of the State of Kansas, *Appellants*.

(408 P. 2d 626)

Opinion filed December 11, 1965.

*Wendell L. Garlinghouse*, of Topeka, argued the cause, and *Glenn J. Shanahan, of Wichita*, was with him on the brief for the appellants.

*John E. Shamberg*, of Kansas City, argued the cause, and *Joseph Cohen, Charles S. Schnider, Joseph P. Jenkins, Barton P. Cohen, Jacob F. May, Jr., Frederick K. Cross, Norma Braly* and *Edward G. Collister, Jr.*, all of Kansas City, were with him on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is an appeal by the Board of Examiners in Optometry from a judgment of the district court of Shawnee County, Kansas, permanently enjoining the Board from enforcing an order it made on the 18th day of April, 1963. By the terms of the Board's order the appellee, Dr. J. G. Haines, was declared to have forfeited his certificate to practice optometry in the state of Kansas for failure to register the certificate with the county clerk of Wyandotte County, Kansas.

The controlling question is whether the Board of Examiners in Optometry had authority to take administrative action upon the facts in this case.

The parties have agreed upon the facts which may be stated as follows:

On the 9th day of September, 1957, Dr. J. G. Haines (plaintiff-appellee), a citizen and resident of Kansas City, Wyandotte County, Kansas, having successfully passed his examination before the Kan-

sas State Board of Examiners in Optometry, was duly licensed as a "registered optometrist."

The Board immediately after certifying Dr. Haines as a registered optometrist issued to him its official certificate No. 905. Imprinted upon the face of this certificate in the lower left-hand corner were the words: "This Certificate *was* first registered in County of Wyandotte State of Kansas." (Emphasis added.)

Upon receipt of his certificate of registration, Dr. Haines practiced optometry in Kansas City, Wyandotte County, Kansas. His office was in the Huron Building.

Dr. Haines did not file his certificate of registration with the county clerk of Wyandotte County as required by G. S. 1949 (now K. S. A.) 65-1503 until the 29th day of March, 1963.

Prior to the 18th day of April, 1963, a complaint was filed with the Board of Examiners by the Committee on Grievances of the Kansas Optometric Association, wherein various grounds were stated alleging that Dr. Haines had violated the optometry laws of the state of Kansas and the rules and regulations and the code of ethics as promulgated by the Board. The purpose for which the complaint sought to invoke the jurisdiction of the Board was stated as follows:

"The State Board of Examiners in Optometry should, for the reasons herein stated, 'ipso facto' forfeit, and revoke the certificate of registration and the license to practice optometry of the said Dr. J. G. Haines as provided by law and particularly as provided by G. S. 1949 [now K. S. A.] 65-1503."

Thereafter Dr. Haines was duly notified by registered mail and a hearing was had before the Board on the complaint.

After a full and complete hearing with all parties given full opportunity to present evidence, the Board handed down its decision by which it decreed, by reason of Dr. Haines' failure to file his certificate of registration within thirty days after its issuance in violation of 65-1503, *supra*, that "said certificate of registration and license to practice optometry in the State of Kansas of the said Dr. J. G. Haines is of no force and effect and is void."

A copy of the transcript of testimony introduced at the hearing before the Board and other proceedings in connection therewith are made a part of the agreed statement of facts.

Dr. Haines first attempted an injunction action in the district court of Wyandotte County, Kansas, where a motion to quash was sustained on the ground of improper venue. Thereafter the instant

injunction action was filed by Dr. Haines in the district court of Shawnee County.

It was agreed the failure of Dr. Haines to file and record his certificate of registration with the Wyandotte county clerk, as required by the provisions of 65-1503, *supra,* was the only ground upon which the Board found the certificate of registration or license of Dr. Haines was forfeited by law. The Board does not assert that there were or are any other grounds for forfeiture or revocation of Dr. Haines' license or certificate of registration.

The transcript of the hearing before the Board discloses that Dr. Haines believed, because of the statement appearing on the left-hand corner of the certificate, that the Board of Examiners had already caused his certificate to be filed in Wyandotte County, Kansas, and thus did not present his certificate to the Wyandotte County clerk for filing until the 29th day of March, 1963, shortly after he was notified by the Board of Examiners of the charges made against him in the complaint.

The evidence discloses that a questionnaire was submitted to Dr. Haines prior to the issuance of his certificate of registration. The questionnaire with Dr. Haines' answers reads as follows:

"IMPORTANT.

"PLEASE FILL IN THE FOLLOWING WHEN YOU RETURN YOUR PHOTOGRAPHS.

"1. Your full name as you wish it to appear on your Certificate.

James Gregory Haines

"2. The County in Kansas where you wish to register your Certificate first.

Wyandotte

"3. The papers for your application for membership in the Kansas Optometric Association and the Optometric Extension Program are enclosed. You are entitled to one year's free membership in the State Association, American Optometric Association and the Extension Program."

Therefore, when Dr. Haines exhibited his certificate of registration to the Board, he pointed out to the Board that his certificate contained the statement that it had already been registered in Wyandotte County, Kansas, and explained to the Board that he accepted that statement to be a fact.

For the reasons hereafter assigned, whether Dr. Haines upon receiving his certificate of registration from the Examining Board was justified in assuming and believing that his certificate had already been filed of record in the office of the county clerk of Wyandotte County, Kansas, is immaterial.

G. S. 1949 (now K. S. A.) 65-1503 provides:

"It shall be unlawful for any person to practice optometry in the state of Kansas without first obtaining a certificate of registration from the board of examiners. *All recipients of said certificate of registration shall present the same for filing to the clerk of the county in which they reside,* and shall pay a fee of fifty cents to the clerk for recording the same. Said clerk shall record said certificate in a book to be provided him for that purpose. . . .

"*Any failure, neglect or refusal on the part of any person holding such certificate of registration or certified copy of such certificate of registration, to record the same as hereinbefore provided for thirty days after the issuance of said certificate of registration or from date of removal of residence shall ipso facto work the forfeiture of his certificate of registration, and it shall not be restored except upon the hearing of the board, who may require him taking a complete examination before the board, and the payment of ten dollars to the Kansas state board of examiners in optometry.*" (Emphasis added.)

G. S. 1949 (now K. S. A.) 65-1504 specifically enumerates those acts which the legislature has defined as unlawful.

The grounds for the suspension or revocation of certificates is set forth in G. S. 1961 Supp., (now K. S. A.) 65-1506. It reads:

"The board may, at its discretion, *suspend or revoke the certificate of registration of any optometrist* for any one of the following causes:

"(*a*) Conviction of the accused of any crime of the grade of felony, or one which involved moral turpitude; or

"(*b*) Any form of fraud or deceit used in securing a certificate of registration; or

"(*c*) Any grossly unprofessional conduct of a nature likely to deceive or defraud the puplic; or

"(*d*) The obtaining of any fee by fraud or misrepresentation; or

"(*e*) The employing either directly or indirectly of any person or persons commonly known as 'cappers' or 'steerers' to obtain business; or

"(*f*) To employ any person to solicit from house to house, or to personally solicit from house to house; or

"(*g*) The employment of any unregistered person to perform the work covered by this act; or

"(*h*) To advertise in any way in which untruthful, improbable or impossible statements are made, regarding treatment, cures or values; or

"(*i*) The use of drugs in the examination or treatment of the eyes; or

"(*j*) For habits of intemperance or habitual drunkenness, addiction to the drug habit, in a manner likely to destroy the accuracy of the work of an optometrist; or

"(*k*) Affliction with a contagious or infectious disease, or one which is likely to destroy the accuracy of the work of the afflicted; or

"(*l*) Failure to actively practice optometry for a period of three (3) consecutive years; or

"(*m*) For any cause for which the optometry board might refuse to admit a candidate to their examinations; or

"(*n*) For the violations of any of the provisions of this act." (Emphasis added.)

G. S. 1961 Supp., (now K. S. A.) 65-1507 provides:

"Before any certificate shall be *suspended* or *revoked*, the optometry board shall mail to the holder of such certificate at the last known post-office address, a notice of the charges against him or her, and the holder of such certificate shall have ten (10) days from date of such notice, in which to file his or her answer, with the optometry board, and shall, if requested, be given a public hearing and opportunity to produce testimony in his favor and to confront the witness against him, and the *suspension* or *revocation* of any certificate of registration *suspended* or *revoked* for any of the above causes except those specified in (*a*) and (*b*) of section 65-1506 of the General Statutes of 1949, as amended, may be set aside upon application of the holder of such certificate at any time within six (6) months from the date of such *suspension* or *revocation*, upon proof being made to the satisfaction of the optometry board that the cause of such *suspension* or *revocation* no longer exists and that the applicant has been sufficiently punished. The optometry board shall not *suspend* any certificate of registration for a period of more than six (6) months. Before setting aside the *suspension* or *revocation* of any certificate, the board may, at its discretion, require the applicant to pass the regular examination given for applicants for certificates of registration." (Emphasis added.)

The trial court found in favor of Dr. Haines and held the decision of the Board of Optometry declaring the forfeiture of his certificate of registration to be a nullity. It thereupon permanently enjoined the Board of Optometry from the enforcement of its order of April 18, 1963, declaring the forfeiture.

Appeal has been duly perfected by the Board.

The provisions of 65-1506 and 1507, *supra*, give the Board the right to "suspend" or "revoke" a certificate of registration, but nowhere in the act is the Board given any authority to "forfeit" a certificate of registration.

We think a careful analysis of the statutory sections heretofore cited and quoted, when read together, gives the Board of Examiners in Optometry no authority to declare a "forfeiture" of a certificate of registration under the provisions of 65-1503, *supra*. Whether a given set of facts should or should not result in a "forfeiture" under 65-1503, *supra*, is a matter for judicial determination.

Under the present facts we are not concerned with the Board's authority to restore a certificate of registration which has been "forfeited."

The Board argues that a license to practice optometry is a statutory privilege and not a property right. It contends the act or proceeding by which a board suspends or revokes a license to practice a profession constitutes an exercise of the police power

of the state and is not the exercise of a judicial power. It argues there is no possible distinction between refusing to grant a license and in forfeiting or revoking one already granted; that the power exercised and the object of its exercise is in each case identical, that is, to exclude an incompetent or unworthy person from holding the license. Therefore, it is argued, the same body which may be vested with the power to grant or refuse to grant the license may also be vested with the power to revoke a license. (Citing, *State v. Board of Medical Examiners*, 34 Minn. 387, 26 N. W. 123; *Meffert v. Medical Board*, 66 Kan. 710, 72 Pac. 247; and *Bohl v. Teall*, 157 Kan. 239, 139 P. 2d 418.)

The appellants quote *Bohl v. Teall*, supra, as follows:

". . . since the right to practice dentistry is a statutory privilege and not a natural right, the legislature may provide for the granting and revoking of licenses according to its own good will and pleasure, and that no constitutional inhibition impairs the force of its statutory declaration. . . ." (p. 241.)

There can be no quarrel with the decisions cited by the Board. The difficulty stems from the Board's attempt to equate the "forfeiture" of a license under 65-1503, *supra,* with its revocation under the provisions of 65-1506 and 1507, *supra.*

Conceding the object to be accomplished by granting the Board authority to revoke a certificate of registration is to exclude incompetent or unworthy persons from holding a license, the facts which purport to authorize a "forfeiture" under 65-1503, *supra,* standing alone, are not sufficient to brand the holder of a certificate as incompetent or unworthy. The legislature has undertaken to denounce *unlawful acts* by persons and/or holders of a certificate of registration in G. S. 1949 (now K. S. A.) 65-1504, 1504a and 1504b. It then proceeds to enumerate *the grounds* for suspension for revocation of certificates in 65-1506, *supra.* These statutory provisions, which specifically list the *unlawful acts* and enumerate *the grounds* for suspension or revocation of certificates of registration, do not seem to mesh readily with the "forfeiture" provision in 65-1503, *supra,* where the holder of a certificate fails to file his certificate with the clerk of the county in which he resides for recording, upon which a charge of fifty cents is imposed by the statute. Furthermore, the provisions for recording the certificate of registration were not designed to protect the public, because protection of the public was the specific intent of G. S. 1961 Supp., (now K. S. A.) 65-1509.

It is conceded Dr. Haines paid the annual renewal fee of $20 and his license was renewed by the Board each year he practiced until 1963. He also complied with the provisions of G. S. 1949, (now K. S. A.) 65-1509a regarding the annual education program.

If the legislature had desired to give the Board power to hear the facts and to decree a forfeiture of one's certificate of registration to practice optometry, we think the legislature would have authorized it to decree a forfeiture in 65-1506 and 1507. Apparently the legislature did not want the Board involved in a judicial determination of facts which might or might not constitute a forfeiture. Particularly is that true where, as here, there are many legal factors bearing upon the question of forfeiture.

For the above reasons the Board had no authority at a hearing set up and conducted pursuant to the provisions of 65-1507, *supra*, to hear evidence and decree its conclusion that Dr. Haines had "forfeited" his certificate of registration for an infraction under the provisions of 65-1503, *supra*.

The judgment of the lower court is affirmed.